# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN BARTLEY, RONALD BROWN, ROBERT BROWN, MICHAEL CUSTER, RALPH DAVIS, DARRELL DECK, STEVEN ERICKSON, DAVID GOLDSTEIN, SHOMOND HARRIS, JEFFREY HILL, VICKEY HUNTER, AWAD IBRAHIM, CHRISTOPHER JOHNSON, JERRY JOHNSTON, RONALD LITTLE, TODD MACKEY, DANIEL MACLEOD, KEITH PENBERTHY, JERRY POUNCEY, ROBERT REISENWITZ, HARVEY RICE, ELLEN SCANCELLA, MARY SMITH, DANIEL TINIANOW, DEBRA WILLIAMS, DONNA WILLIAMS, MICHAEL WORKMAN, and on behalf of themselves and all others similarly situated, | Case No. 1:21-11206<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |
| *Plaintiffs*, | |
| v. | |
| KONINKELIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC; | |
| *Defendants.* | |

Plaintiffs Shawn Bartley ("Plaintiff Bartley"), Ronald Brown ("Plaintiff Ronald Brown"), Robert Brown ("Plaintiff Robert Brown"), Michael Custer ("Plaintiff Custer"), Ralph Davis ("Plaintiff Davis"), Darrell Deck ("Plaintiff Deck"), Steven Erickson ("Plaintiff Erickson"), David Goldstein ("Plaintiff Goldstein"), Shomond Harris ("Plaintiff Harris"), Jeffrey Hill ("Plaintiff Hill"), Vickey Hunter ("Plaintiff Hunter"), Awad Ibrahim ("Plaintiff Ibrahim"), Christopher Johnson ("Plaintiff Johnson"), Jerry Johnston ("Plaintiff Johnston"), Ronald Little ("Plaintiff Little"), Todd Mackey ("Plaintiff Mackey"), Daniel Macleod ("Plaintiff Macleod"), Keith Penberthy ("Plaintiff Penberthy"), Jerry Pouncey ("Plaintiff Pouncey"), Robert Reisenwitz

("Plaintiff Reisenwitz"), Harvey Rice ("Plaintiff Rice"), Ellen Scancella ("Plaintiff Scancella")

Mary Smith ("Plaintiff Smith"), Daniel Tinianow ("Plaintiff Tinianow"), Debra Williams

("Plaintiff Debra Williams"), Donna Williams ("Plaintiff Donna Williams"), and Michael

Workman ("Plaintiff Workman")(collectively "Plaintiffs"), themselves and the class and

subclasses of all others similarly situated as defined below, for their complaint against

defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips

NA"), and Philips RS North America LLC ("Philips RS") (collectively, Royal Philips, Philips

NA, and Philips RS are "Philips" or the "Defendants"), allege the following based on (a)

personal knowledge, (b) the investigation of counsel, and (c) information and belief.

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and a proposed class and

subclasses of purchasers of Philips Bi-Level Positive Airway Pressure ("BiPAP"), Continuous

Positive Airway Pressure ("CPAP"), and mechanical ventilator devices, which contain polyester-

based polyurethane ("PE-PUR") sound abatement foam ("PE-PUR Foam").

2.      On April 26, 2021, Philips disclosed it had determined that there were risks that the

PE-PUR Foam used in certain devices manufactured by Philips may degrade under certain

circumstances.  On June 14, 2021, Philips issued a recall (the "Recall") of devices containing PE-

PUR Foam, noting that Philips had determined that the PE-PUR Foam was at risk for degradation

into particles which may enter the device's pathway and be ingested or inhaled by users of devices

which contain PE-PUR Foam, as well as off-gassing certain chemicals.  Philips recommended that

patients using Philips BiPAP and CPAP devices immediately discontinue their use of their devices.

3.       On July 22, 2021, the United States Food and Drug Administration classified the recall of Philips devices containing PE-PUR Foam as a Class 1 recall, the most serious type of recall reserved for recalls of devices that may cause serious injuries or death.

4.       Plaintiffs all owned or leased Philips CPAP, BiPAP, or mechanical ventilator devices prior to June 14, 2021. Plaintiffs subsequently learned that their CPAP, BiPAP, or mechanical ventilator devices had been recalled by Philips due to the presence of a dangerous PE-PUR Foam that could cause them to suffer from adverse health effects, including, *inter alia*, cancer. Plaintiffs have been advised by Philips to discontinue use of their devices. Plaintiffs must now spend a substantial amount of time and incur substantial expenses to replace the device.

5.       Plaintiffs seek to recover damages based on, *inter alia*, Philips' negligence, breach of contract, breach of express warranty, breach of implied warranties, and breaches of various state consumer protection laws in connection with its manufacture, marketing and sales of devices containing PE-PUR Foam on behalf of themselves and the proposed Class and Subclasses.

## PARTIES

6.       Plaintiff Shawn Bartley is a citizen of the Commonwealth of Massachusetts.

7.       Plaintiff Ronald Brown is a citizen of the State of Texas.

8.       Plaintiff Robert Brown is a citizen of the State of Arizona.

9.       Plaintiff Michael Custer is a citizen of the State of Texas.

10.      Plaintiff Ralph Davis is a citizen of the State of Nevada.

11.      Plaintiff Darrell Deck is a citizen of the State of Oklahoma.

12.      Plaintiff Steven Erickson is a citizen of the State of Minnesota.

13.      Plaintiff David Goldstein is a citizen of the State of Connecticut.

14.      Plaintiff Shomond Harris is a citizen of the State of Georgia.

15.     Plaintiff Jeffrey Hill is a citizen of the State of Tennessee.

16.     Plaintiff Vickey Hunter is a citizen of the State of Alabama.

17.     Plaintiff Awad Ibrahim is a citizen of the State of California.

18.     Plaintiff Christopher Johnson is a citizen of the State of Ohio.

19.     Plaintiff Jerry Johnston is a citizen of the State of Texas.

20.     Plaintiff Ronald Little is a citizen of the State of Florida.

21.     Plaintiff Todd Mackey is a citizen of the State of Washington.

22.     Plaintiff Daniel Macleod is a citizen of the State of Florida.

23.     Plaintiff Keith Penberthy is a citizen of the State of Alabama.

24.     Plaintiff Jerry Pouncey is a citizen of the State of Florida.

25.     Plaintiff Robert Reisenwitz is a citizen of the State of Nevada.

26.     Plaintiff Harvey Rice is a citizen of the State of California.

27.     Plaintiff Ellen Scancella is a citizen of the Commonwealth of Pennsylvania.

28.     Plaintiff Mary Smith is a citizen of the Commonwealth of Kentucky.

29.     Plaintiff Daniel Tinianow is a citizen of the State of Colorado.

30.     Plaintiff Debra Williams is a citizen of the State of Texas.

31.     Plaintiff Donna Williams is a citizen of the State of Ohio.

32.     Plaintiff Michael Workman is a citizen of the State of Colorado.

33.     Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands.  Royal Philips is the parent company of Philips NA and Philips RS.

34.     Defendant Philips North America LLC is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141.  Philips

North America is a wholly-owned subsidiary of Koninklijke Philips N.V.  Upon information and belief, Philips NA manages the operation of Royal Philips' various lines of business, including Philips RS, in North America.

35.     Defendant Philips RS North America LLC ("Philips RS") is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15296. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.[1]

## JURISDICTION AND VENUE

36.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendants.

37.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) and (c) and 18 U.S.C. §1965, because Defendants transact business in, are found in, and/or have agents in this District, and because some of the actions giving rise to this complaint took place within this District.

38.     The Court has personal jurisdiction over the Defendants. Defendants have transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District.  The scheme and conspiracy have been directed at, and have had the intended effect of, causing injury

---

[1]     *Philips announces completion of tender offer to acquire Respironics*, WEB WIRE, https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 17, 2021).

to persons residing in, located in, or doing business throughout the United States, including in this District.

## FACTUAL BACKGROUND

### I.      Continuous Positive Airway Pressure Therapy

39.     Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea.  CPAP therapy typically involves the use of a nasal or facemask device, and a CPAP device helps individuals breathe by increasing the air pressure in an individual's throat.

40.     Sleep Apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

### II.      Bi-Level Positive Airway Pressure Therapy

41.     Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea.  Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's

airway. BiPAP is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels - inspiratory and expiratory - of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device.  The inspiratory positive airway pressure assists a person as a breath is taken in.  Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. BiPAP devices deliver one level of pressurize air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

###    III.    <u>Mechanical Ventilation</u>

42.    Mechanical ventilation is a treatment to help a person breathe when they find it difficult or are unable to breathe on their own. A mechanical ventilator pushes airflow into the patient's lungs to help them breathe. Mechanical ventilation may be invasive ventilation with a tube inserted into the patient's airway, performed in the intensive care unit in the hospital or a long-term institutional setting. Non-invasive ventilation can be used at home by people with respiratory difficulties.

<u>SUBSTANTIVE ALLEGATIONS</u>

43.    Philips developed, marketed, and sold a lineup of CPAP and BiPAP respirator devices under its "Sleep & Respiratory Care" portfolio designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including sleep apnea. Philips' CPAP and BiPAP respirator devices typically cost several hundred, if not thousands of dollars.  Philips has sold millions of these devices in the United States.

**IV.**   **Philips Sleep & Respiratory Care Devices Were Endangering its Users**

44.   On April 26, 2021, as part of its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR "sound abatement" foam Philips used to minimize noise in several CPAP and BiPAP respirators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[2]

45.   Over a month later, on June 14, 2021, Philips announced that it was recalling several models of BiPAP, CPAP, and mechanical ventilator devices "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices."[3] Specifically, Philips announced that it had determined that the "PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals."[4] In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.[5]

---

[2]    *First Quarter Results*, PHILIPS (Apr. 26 2021), https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf (accessed June 16, 2021).

[3]    *Philips issues recall notification to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021), https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 16, 2021).

[4]    *Id.*

[5]    Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 16, 2021).

46.   The list of the devices recalled by Philips (the "Recalled Devices") include:

| Philips CPAP and BiLevel PAP Devices Subject to Recall[6] | |
|---|---|
| **Device Name/Model** | **Type** |
| Philips E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| Philips DreamStation ST, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne ASV4 | Continuous Ventilator, Non-life Supporting |
| Philips C Series ASV, S/T, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips OmniLab Advanced Plus, In-Lab Titration Device | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne (Q Series) | Non-continuous Ventilator |
| Philips DreamStation, CPAP, Auto CPAP, BiPAP) | Non-continuous Ventilator |
| Philips DreamStation GO, CPAP, APAP | Non-continuous Ventilator |
| Philips Dorma 400, 500, CPAP | Non-continuous Ventilator |
| Philips REMStar SE Auto, CPAP | Non-continuous Ventilator |

---

[6]      *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

| Philips Mechanical Respirator Devices Subject to Recall[7] | |
| --- | --- |
| **Philips Device Name/Model** | **Type** |
| Philips Trilogy 100 Ventilator | Continuous Ventilator |
| Philips Trilogy 200 Ventilator | Continuous Ventilator |
| Philips Garbin Plus, Aeris, LifeVent Ventilator | Continuous Ventilator |
| Philips A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP V30 Auto Ventilator | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |
| Philips A-Series BiPAP A30 | Continuous Ventilator, Non-life Supporting |

47.    According to Philips, the PE-PUR Foam used in Recalled Devices puts Recalled Device users at risk of suffering from the following:  "Irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g. kidneys and liver) and toxic carcinogenic affects."[8]  Philips further noted that it had received specific complaints from Recalled Devices users as suffering from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."[9]

---

[7]    *Id.*

[8]    *Id.*

[9]    *Id.*

## V.  **The Health Risks Associated with Use of the Recalled Devices Renders Them Worthless**

48.     As a result of the health risks associated with the use of the Recalled Devices, together with Defendants' concealment of these risks from the date they were first reported through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

49.     The information described above, including the now-known health risks, the recall, and the medical advice issued by Philips, have rendered the Recalled Device worthless to patients with sleep and respiratory conditions.  Individuals not using life-supporting ventilators must discontinue their use of the Recalled Devices or face health risks as grave as cancer.  If they choose to discontinue use they must pay for another expensive device in order to receive effective treatment.  Individuals using life-supporting ventilators must seek out an alternative before discontinuing their use of the Recalled Devices.

50.     Recognizing this, Philips issued the following advice to patients using any of the Recalled Devices:

- "**For patients using BiLevel PAP and CPAP devices**:  Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[10]

- "**For patients using life-sustaining mechanical ventilator devices: <u>DO NOT discontinue or alter prescribed therapy</u>, without consulting physicians to determine appropriate next steps.**"[11]

51.     As a result of the above, Plaintiffs and the Class will have to undertake considerable expense replacing the Recalled Devices.

---

[10]     *Id.* (emphasis in original).

[11]     *Id.* (emphasis in original).

11

## VI.   Philips Unreasonably Delayed its Recall

52.     Philips has not disclosed when it first received reports from users of its Sleep &
Respiratory Care devices "regarding the presence of black debris/particles within the airpath
circuit (extending from the device outlet, humidifier, tubing, and mask)."[12]  However, given the
fact that all Philips Respironics devices manufactured from 2009 to present have been recalled, it
is unlikely that Defendants only recently learned of these issues.

53.     Thus, as a result of user reports, Defendants were aware of the degradation of the
PE-PUR sound abatement foam used in the Recalled Devices, yet continued to manufacture and
sell the Recalled Devices with such awareness for a significant period of time.  During this period,
Defendants unreasonably and unjustly profited from the manufacture and sale of the Recalled
Devices and unreasonably put users of the Recalled Devices at risk of developing adverse health
effects, including cancer.

54.     In fact, it was only after the early April 2021 release of the Philips Respironics
DreamStation 2, a breathing device which does not contain the dangerous PE-PUR Foam, that
Philips publicly admitted the problems with the Recalled Devices in a regulatory filing.  As
detailed above, it was not for another seven weeks that Philips officially recalled the Recalled
Devices.

## VII.   Philips' Recall Provides No Relief to Class Members

55.     As part of its announcement of the recall on June 14, 2021, Philips announced that
it would be implementing "a comprehensive repair and replacement program for the affected
devices" as follows:

---

[12]     *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*,
PHILIPS RESPIRONICS https://www.usa.philips.com/healthcare/e/sleep/communications/src-
update#section_2 (accessed June 16, 2021).

**Repair and replacement program**

Philips is providing the relevant regulatory agencies with required information related to the launch and implementation of the projected correction. The company will replace the current sound abatement foam with a new material and has already begun the preparations, which include obtaining the relevant regulatory clearances. Philips aims to address all affected devices in scope of this correction as expeditiously as possible.

As part of the program, the first-generation DreamStation product families will be modified with a different sound abatement foam and shipped upon receipt of the required regulatory clearances. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected by the issue. To support the program, Philips is increasing the production of its DreamStation 2 CPAP devices, that are available in the US and selected countries in Europe.[13]

56.     As the above language makes clear, Philips does not intend to replace the Recalled Devices with its newly manufactured DreamStation 2 device that is not affected by the recall (although individuals can purchase a new Philips DreamStation 2 on their own), but instead intends to switch out the dangerous PE-PUR Foam in each Recalled Device. This is a time-consuming process that will leave Recalled Device users without use of their devices for untold periods of time.

57.     As implemented to date, the "repair and replacement" program has not repaired or replaced a single Recalled Device. Recalled Device users seeking to have their devices repaired or replaced are asked to register their devices on the Philips website, but are provided only with a registration number and no information as to when they can expect their Recalled Devices to be repaired. Upon information and belief, Philips has not provided **any** guidance to **anyone** as to when Recalled Devices will be repaired.

---

[13]     *Id.*

VIII.   **Plaintiff Shawn Bartley**

58.    Plaintiff Shawn Bartley is a citizen and resident of the Commonwealth of Massachusetts.

59.    Plaintiff Bartley owned or leased, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

60.    Plaintiff Bartley overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

61.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Bartley's Recalled Device is now worthless.

IX.    **Plaintiff Ronald Brown**

62.    Plaintiff Ronald Brown is a citizen and resident of the State of Texas.

63.    Plaintiff Ronald Brown owned or leased, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

64.    Plaintiff Ronald Brown overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

65.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Ronald Brown's Recalled Device is now worthless.

X.    **Plaintiff Robert Brown**

66.    Plaintiff Robert Brown is a citizen and resident of the State of Arizona.

67.    Plaintiff Robert Brown owned or leased, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

68.     Plaintiff Robert Brown overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

69.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Robert Brown's Recalled Device is now worthless

**XI.     Plaintiff Michael Custer**

70.     Plaintiff Michael Custer is a citizen and resident of the State of Texas.

71.     Plaintiff Custer owned or leased, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

72.     Plaintiff Custer owned or leased, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

73.     Plaintiff Custer overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

74.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Custer's Recalled Device is now worthless.

**XII.     Plaintiff Ralph Davis**

75.     Plaintiff Ralph Davis is a citizen and resident of the State of Nevada.

76.     Plaintiff Davis regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

77.     Plaintiff Davis overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

78.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Davis' Recalled Device is now worthless.

**XIII.   <u>Plaintiff Darrell Deck</u>**

79.     Plaintiff Darrell Deck is a citizen and resident of the State of Oklahoma.

80.     Plaintiff Deck regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

81.     Plaintiff Deck overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

82.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Deck's Recalled Device is now worthless.

**XIV.   <u>Plaintiff Steven Erickson</u>**

83.     Plaintiff Steven Erickson is a citizen and resident of the State of Minnesota.

84.     Plaintiff Erickson regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

85.     Plaintiff Erickson overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

86.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Erickson's Recalled Device is now worthless.

### XV.   **Plaintiff David Goldstein**

87.    Plaintiff David Goldstein is a citizen and resident of the State of Connecticut.

88.    Plaintiff Goldstein regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

89.    Plaintiff Goldstein overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

90.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Goldstein's Recalled Device is now worthless.

### XVI.   **Plaintiff Shomond Harris**

91.    Plaintiff Shomond Harris is a citizen and resident of the State of Georgia.

92.    Plaintiff Harris regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

93.    Plaintiff Harris overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

94.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Harris' Recalled Device is now worthless.

### XVII.   **Plaintiff Jeffrey Hill**

95.    Plaintiff Jeffrey Hill is a citizen and resident of the State of Tennessee.

96.    Plaintiff Hill owned or leased, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

97.     Plaintiff Hill overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

98.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Hill's Recalled Device is now worthless.

## XVIII. Plaintiff Vickey Hunter

99.     Plaintiff Vickey Hunter is a citizen and resident of the State of Alabama.

100.     Plaintiff Hunter regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

101.     Plaintiff Hunter overpaid for a Recalled Device when she purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

102.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Hunter's Recalled Device is now worthless.

## XIX.  Plaintiff Awad Ibrahim

103.     Plaintiff Award Ibrahim is a citizen and resident of the State of California.

104.     Plaintiff Ibrahim regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

105.     Plaintiff Ibrahim overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

106.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Ibrahim's Recalled Device is now worthless.

XX.   **Plaintiff Christopher Johnson**

107.    Plaintiff Christopher Johnson is a citizen and resident of the State of Ohio.

108.    Plaintiff Johnson regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

109.    Plaintiff Johnson overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

110.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Johnson's Recalled Device is now worthless.

XXI.   **Plaintiff Jerry Johnston**

111.    Plaintiff Jerry Johnston is a citizen and resident of the State of Texas.

112.    Plaintiff Johnston regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

113.    Plaintiff Johnston overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

114.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Johnston's Recalled Device is now worthless.

XXII.  **Plaintiff Ronald Little**

115.    Plaintiff Ronald Little is a citizen and resident of the State of Florida.

116.    Plaintiff Little regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

117.    Plaintiff Little overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

118.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Little's Recalled Device is now worthless.

### XXIII. Plaintiff Todd Mackey

119.    Plaintiff Todd Mackey is a citizen and resident of the State of Washington.

120.    Plaintiff Mackey regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

121.    Plaintiff Mackey overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

122.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Mackey's Recalled Device is now worthless.

### XXIV. Plaintiff Daniel Macleod

123.    Plaintiff Daniel Macleod is a citizen and resident of the State of Florida.

124.    Plaintiff Macleod regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

125.    Plaintiff Macleod overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

126.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Macleod's Recalled Device is now worthless.

**XXV.  Plaintiff Keith Penberthy**

127.    Plaintiff Keith Penberthy is a citizen and resident of the State of Alabama.

128.    Plaintiff Penberthy regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

129.    Plaintiff Penberthy overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

130.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Penberthy s Recalled Device is now worthless.

**XXVI. Plaintiff Jerry Pouncey**

131.    Plaintiff Jerry Pouncey is a citizen and resident of the State of Florida.

132.    Plaintiff Pouncey regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

133.    Plaintiff Pouncey overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

134.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Pouncey's Recalled Device is now worthless.

**XXVII.  Plaintiff Robert Reisenwitz**

135.    Plaintiff Robert Reisenwitz is a citizen and resident of the State of Nevada.

136.    Plaintiff Reisenwitz regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

137.    Plaintiff Reisenwitz overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

138.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Reisenwitz's Recalled Device is now worthless.

### XXVIII.   Plaintiff Harvey Rice

139.    Plaintiff Harvey Rice is a citizen and resident of the State of California.

140.    Plaintiff Rice regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

141.    Plaintiff Rice overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

142.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Rice's Recalled Device is now worthless.

### XXIX. Plaintiff Ellen Scancella

143.    Plaintiff Ellen Scancella is a citizen and resident of the Commonwealth of Pennsylvania.

144.    Plaintiff Scancella regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

145.    Plaintiff Scancella overpaid for a Recalled Device when she purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

146.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Scancella's Recalled Device is now worthless.

**XXX.  Plaintiff Mary Smith**

147.    Plaintiff Mary Smith is a citizen and resident of the Commonwealth of Kentucky.

148.    Plaintiff Smith regularly used his Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

149.    Plaintiff Smith overpaid for a Recalled Device when she purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

150.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Smith's Recalled Device is now worthless.

**XXXI. Plaintiff Daniel Tinianow**

151.    Plaintiff Daniel Tinianow is a citizen and resident of the State of Colorado.

152.    Plaintiff Tinianow regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

153.    Plaintiff Tinianow overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

154.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Tinianow's Recalled Device is now worthless.

XXXII.   **Plaintiff Debra Williams**

155.    Plaintiff Debra Williams is a citizen and resident of the State of Texas.

156.    Plaintiff Debra Williams regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

157.    Plaintiff Debra Williams overpaid for a Recalled Device when she purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

158.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff B Debra Williams' Recalled Device is now worthless.

XXXIII.   **Plaintiff Donna Williams**

159.    Plaintiff Donna Williams is a citizen and resident of the State of Ohio.

160.    Plaintiff Donna Williams regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

161.    Plaintiff Donna Williams overpaid for a Recalled Device when she purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

162.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Donna Williams' Recalled Device is now worthless.

XXXIV.   **Plaintiff Michael Workman**

163.    Plaintiff Michael Workman is a citizen and resident of the State of Colorado.

164.    Plaintiff Workman regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

165.    Plaintiff Workman overpaid for a Recalled Device when he purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

166.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff B Workman's Recalled Device is now worthless.

## TOLLING AND ESTOPPEL

### I.    DISCOVERY RULE TOLLING

167.    Plaintiffs, the Class, and Subclasses had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Devices.

168.    Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable care, could have discovered the conduct by Philips alleged herein.  Further, Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

169.    For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs, the Class, and the Subclasses.

### II.    FRAUDULENT CONCEALMENT TOLLING

170.    By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Devices, Philips concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

171.    Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses.  Plaintiffs and the members of the Class and Subclasses were unaware of the facts alleged herein without any fault or lack of

diligence on their part and could not have reasonably discovered Defendants' conduct.  For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

## CLASS ACTION ALLEGATIONS

172.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

173.    Plaintiffs seek class certification on behalf of a class defined as follows (the "Class"):

**NATIONWIDE CLASS:** all persons in the United States who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Class").

174.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**ALABAMA SUBCLASS**: all persons who were or are citizens of the State of Alabama who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Alabama Subclass").

175.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**ARIZONA SUBCLASS**: all persons who were or are citizens of the State of Arizona who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Arizona Subclass").

176.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**CALIFORNIA SUBCLASS:** all persons who were or are citizens of the State of California who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "California Subclass").

177.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**COLORADO SUBCLASS:** all persons who were or are citizens of the State of Colorado who, from the beginning of any applicable limitations period through June 14,

2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Colorado Subclass").

178.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**CONNECTICUT SUBCLASS**: all persons who were or are citizens of the State of Connecticut who, from the beginning of any applicable limitations period through June 14, 2021, purchased one of the Recalled Devices for household or business use, and not for resale (the "Connecticut Subclass").

179.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**FLORIDA SUBCLASS:** all persons who were or are citizens of the State of Florida who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Florida Subclass").

180.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**GEORGIA SUBCLASS:** all persons who were or are citizens of the State of Georgia who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Georgia Subclass").

181.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**KENTUCKY SUBCLASS:** all persons who were or are citizens of the Commonwealth of Kentucky who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Kentucky Subclass").

182.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MASSACHUSETTS SUBCLASS:** all persons who were or are citizens of the Commonwealth of Massachusetts who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Massachusetts Subclass").

183.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MINNESOTA SUBCLASS:** all persons who were or are citizens of the State of Minnesota who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Minnesota Subclass").

184.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEVADA**: all persons who were or are citizens of the State of Nevada who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Nevada Subclass").

185.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**OHIO SUBCLASS**: all persons who were or are citizens of the State of Ohio who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Ohio Subclass").

186.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**OKLAHOMA SUBCLASS**: all persons who were or are citizens of the State of Oklahoma who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Oklahoma Subclass").

187.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**PENNSYLVANIA SUBCLASS:** all persons who were or are citizens of the Commonwealth of Pennsylvania who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Pennsylvania Subclass").

188.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**TENNESSEE SUBCLASS**: all persons who were or are citizens of the State of Tennessee who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Tennessee Subclass").

189.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**TEXAS SUBCLASS**: all persons who were or are citizens of the State of Texas who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Texas Subclass").

190.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**WASHINGTON SUBCLASS**: all persons who were or are citizens of the State of Washington who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Washington Subclass").

191.     Plaintiffs reserve the right to modify or refine the definitions of the Class or Subclasses based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

192.     Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants' and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs  and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

193.     **Ascertainability**. The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass.  Further, the Classes and Subclasses can be readily identified through records maintained by Defendants.

194.     **Numerosity (Rule 23(a)(1))**. The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable.  The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased the Philips Recalled Devices.

195.     **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

29

- whether Defendants owed a duty of care to Plaintiffs and the Classes;

- whether Defendants knew or should have known that the PE-PUR Foam used for sound abatement posed health risks;

- whether Defendants wrongfully represented that the PE-PUR Foam used for sound abatement in the Recalled Devices was safe;

- whether the Recalled Devices retained any value post-recall;

- whether Defendants wrongfully represented that the Recalled Devices were safe to use;

- whether Defendants wrongfully failed to disclose that the PE-PUR Foam used for sound abatement in the Recalled Devices posed health risks to Recalled Device users;

- whether Defendants' representations in advertising, warranties, packaging, and/or labeling were false, deceptive, and misleading;

- whether those representations were likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, health risks as a material fact in purchasing one of the Recalled Devices;

- whether Defendants had knowledge that those representations were false, deceptive, and misleading;

- whether Defendants breached their express warranties;

- whether Defendants breached their implied warranties;

- whether Defendants engaged in unfair trade practices;

- whether Defendants engaged in false advertising;

- whether Defendants' conduct was negligent per se;

- whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

-  whether Plaintiffs and the members of the Class and Subclasses are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class and Subclasses are entitled to declaratory and injunctive relief.

196.    **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and Subclasses (as applicable) suffered injuries as a result of Philips' wrongful conduct that is uniform across the Class and Subclasses.

197.    **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

198.    **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying

adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

199.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

200.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole.  Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### BREACH OF EXPRESS WARRANTY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

201.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

202.    Philips marketed and sold the Recalled Devices into the stream of commerce with the intent that the Recalled Devices would be purchased by Plaintiffs and the Class and State Subclasses.

203.    Philips expressly warranted, advertised, and represented to Plaintiffs and the Class and State Subclasses that the Recalled Devices were safe and appropriate for human use.

204.    Philips made these express warranties regarding the Recalled Devices quality and fitness for use in writing through its website, advertisements, and marketing materials and on the Recalled Devices' packaging and labels.  These express warranties became part of the basis of the bargain that Plaintiffs and the Class and State Subclasses entered into upon purchasing the Recalled Devices.

205.    Philips' advertisements, warranties, and representations were made in connection with the sale of the Recalled Devices to Plaintiffs and the Class and State Subclasses.  Plaintiffs and the Class and State Subclasses relied on Philips' advertisements, warranties, and representations regarding the Recalled Devices in deciding whether to purchase Philips' products.

206.    Philips' Recalled Devices do not conform to Philips' advertisements, warranties and representations in that they are not safe, healthy, and appropriate for human use.

207.    Philips therefore breached its express warranties by placing Recalled Devices into the stream of commerce and selling them to consumers, when their use had dangerous effects and

was unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips. These associated health effects substantially impair the use, value, and safety of Recalled Devices.

208.    Philips was aware, or should have been aware, of the toxic or dangerous health effects of the use of the Recalled Devices, but nowhere on the package labeling or on Philips' websites or other marketing materials did Philips warn Plaintiffs and members of the Class and State Subclasses that they were at risk of developing health problems as a result of the dangerous PE-PUR Foam used in the Recalled Devices.

209.    Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the Recalled Devices and deceptively represented that these products were safe, healthy, and appropriate for use. Philips thus utterly failed to ensure that the material representations it was making to consumers were true.

210.    The adverse health effects associated with use of the Recalled Devices existed when they left Philips' possession or control and were sold to Plaintiffs and members of the Class and State Subclasses. The dangers associated with use of the Recalled Devices were undiscoverable by Plaintiffs and members of the Class and State Subclasses at the time of purchase of the Recalled Devices.

211.    As manufacturers, marketers, advertisers, distributors, and sellers of Recalled Devices, Philips had exclusive knowledge and notice of the fact that the Recalled Devices did not conform to the affirmations of fact and promises.

212.    In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations to induce Plaintiffs and members of the Class and State Subclasses to rely on such representations.

34

213.    Philips' affirmations of fact and promises were material, and Plaintiffs and members of the Class and State Subclasses reasonably relied upon such representations in purchasing the Recalled Devices.

214.    All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or State Subclasses.

215.    Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here.  Philips was placed on reasonable notice that the PE-PUR Foam in the Recalled Devices was unsafe from user reports.  Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Devices to make them safe and healthy for use by Plaintiffs and members of the Class and State Subclasses, but failed to do so until now.

216.    As a direct and proximate result of Philips' breaches of express warranty, Plaintiffs and members of the Class and State Subclasses have been damaged because they did not receive the products as specifically warranted by Philips.  Plaintiffs and members of the Class and State Subclasses did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Recalled Devices.

217.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (on behalf of the Nationwide Class or, alternatively, the State Subclasses)

218.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

219.    Philips are merchants engaging in the sale of goods to Plaintiffs and the Class and State Subclasses.

220.    There was a sale of goods from Philips to Plaintiffs and the Class and State Subclasses.

221.    At all times mentioned herein, Philips manufactured or supplied Recalled Devices, and prior to the time the Recalled Devices were purchased by Plaintiffs and the Class and State Subclasses, Philips impliedly warranted to them that the Recalled Devices were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Recalled Devices' labels and packaging, including that the Recalled Devices were safe and appropriate for human use.  Plaintiffs and the Class and State Subclasses relied on Philips' promises and affirmations of fact when they purchased the Recalled Devices.

222.    Contrary to these representations and warranties, the Recalled Devices were not fit for their ordinary use, and did not conform to Philips' affirmations of fact and promises as use of the Recalled Devices was accompanied by the risk of adverse health effects that do not conform to the packaging.

223.    Philips breached its implied warranties by selling Recalled Devices that failed to conform to the promises or affirmations of fact made on the packaging or label as use of each Recalled Devices was accompanied by the risk of developing adverse health effects that do not conform to the packaging.

36

224.    Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Devices through user reports submitted to Philips.

225.    Privity exists because Philips impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Recalled Devices were natural, and suitable for use to treat health conditions by individuals, and made no mention of the attendant health risks associated with use of the Recalled Devices.

226.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that each Recalled Device they purchased is worth less than the price they paid and that they would not have purchased at all had they known of the attendant health risks associated with the use of each Recalled Device.

227.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their implied warranties and resulting breach.

### THIRD CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

228.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

229.    Philips falsely represented to Plaintiffs and the Class and State Subclasses that the Recalled Devices were safe for human use.

230.    Philips intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class and State Subclasses to purchase Recalled Devices.

231.    Philips knew that its representations about the Recalled Devices were false in that the Recalled Devices contained PE-PUR Foam and were thus at risk of causing adverse health

effects to users of the Recalled Devices which does not conform to the products' labels, packaging, advertising, and statements.  Philips knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class and State Subclasses.

232.    Plaintiffs and the Class and State Subclasses did in fact rely on these misrepresentations and purchased Recalled Devices detriment.  Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Devices, Plaintiffs' and the Class' and State Subclasses' reliance on Philips' misrepresentations was justifiable.

233.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks, including cancer, associated with the use of the Recalled Devices that do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

234.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION

### (on behalf of Nationwide Class or, alternatively, the State Subclasses)

235.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

236.    Philips concealed from and failed to disclose to Plaintiffs and the Class and State Subclasses that use of Recalled Devices is accompanied by a risk of adverse health effects that does not conform to the products' labels, packaging, advertising, and statements.

237.     Philips was under a duty to disclose to Plaintiffs and the Class and State Subclasses the true safety, quality, characteristics, fitness for use, and suitability of the Recalled Devices because: (1) Philips was in a superior position to know the true state of facts about its products; (2) Philips was in a superior position to know the risks associated with the use of, characteristics of, and suitability of Recalled Devices for use by individuals; and (3) Philips knew that Plaintiffs and the Class and State Subclasses could not reasonably have been expected to learn or discover that Recalled Devices were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Recalled Devices.

238.     The facts concealed or not disclosed by Philips to Plaintiffs and the Class and State Subclasses were material in that a reasonable consumer would have considered them important when deciding whether to purchase Recalled Devices.

239.     Plaintiffs and the Class and State Subclasses justifiably relied on the Philips' omissions to their detriment.  The detriment is evident from the true quality, characteristics, and risk associated with the use of Recalled Devices, which is inferior when compared to how Recalled Devices are advertised and represented by Philips.

240.     As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks associated with the use of the Recalled Devices which do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

241.     Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

### (on behalf of the Nationwide Class or, alternatively, the State Subclasses)

242.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

243.    Philips had a duty to Plaintiffs and the Class and State Subclasses to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of Recalled Devices.

244.    Philips breached its duty to Plaintiffs and the Class by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove Recalled Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

245.    Philips knew or should have known that the qualities and characteristics of the Recalled Devices were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Philips.  Specifically, Philips knew or should have known that: (1) the use of Recalled Devices was accompanied by risk of adverse health effects do not conform to the packaging and labeling; (2) the Recalled Devices were adulterated, or at risk of being adulterated, by the PE-PUR Foam; and (3) the Recalled Devices were otherwise not as warranted and represented by Philips.

246.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known

they contained PE-PUR Foam that could cause users of the Recalled Devices to suffer adverse health effects that do not conform to the products' labels, packaging, advertising, and statements.

247.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

248.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

249.    Plaintiffs and the Class and State Subclasses conferred substantial benefits on Philips through their purchase of Recalled Devices.  Philips knowingly and willingly accepted and enjoyed these benefits.

250.    Philips either knew or should have known that the payments rendered by Plaintiffs and the Class and State Subclasses were given with the expectation that the Recalled Devices would have the qualities, characteristics, and suitability for use represented and warranted by Philips.  As such, it would be inequitable for Philips to retain the benefit of the payments under these circumstances.

251.    Philips' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Philips to retain the benefits without payment of the value to Plaintiffs and the Class and State Subclasses.

252.    Plaintiffs and the Class and State Subclasses are entitled to recover from Philips all amounts wrongfully collected and improperly retained by Philips, plus interest thereon.

253.     Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## SEVENTH CLAIM FOR RELIEF

### ALABAMA DECEPTIVE TRADE PRACTICES ACT—DECEPTION

### Ala. Code §§ 8-19-1 *et seq.*

**(on behalf of Plaintiff Vickey Hunter, Plaintiff Keith Penberthy and the Alabama Subclass)**

254.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

255.     At all relevant times, members of the Alabama Subclass were natural people who purchased Defendants' Recalled Devices detailed above for personal, family or household use.

256.     At all relevant times, Defendants were either natural persons or corporations, trusts, partnerships, incorporated or unincorporated associations or some other legal entity.

257.     The Recalled Devices are "goods" as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(3).

258.     At all relevant times, Defendants were engaged in Trade or Commerce as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(8).

259.     The Alabama Deceptive Trade Practices Act declares that (1) passing off goods or services as those of another; (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causing confusion or misunderstanding as to the affiliation, connection, or association with, or certification by another, provided that this section shall not prohibit the private labeling of goods or services; (4) using deceptive representations or designations of geographic origin in connection with goods or services; (5) representing that goods or services have sponsorship, approval, characteristics,

42

ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have; (6) representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased; (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (8) disparaging the goods, services, or business of another by false or misleading representation of fact; (9) advertising goods or services with intent not to sell them as advertised; (10) advertising goods or services with intent not to supply reasonably expectable public demand unless the advertisement discloses a limitation of quantity; (11) making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions; and (12) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; is unlawful.  *See* Ala. Code § 8-19-5.

260.    The Alabama Deceptive Trade Practices Act further states that any person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer, shall be liable to each consumer for (1) any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater; or (2) up to three times any actual damages. *See* Ala. Code § 8-19-10.

261.    Defendants, by and through their employees, agents, and/or servants, and in connection with its advertising and sale of the Recalled Devices detailed above, knowingly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

262.    Defendants knew that their statements were false or that their conduct was deceptive because, on information and belief, they routinely received complaints regarding the degradation of the PE-PUR Foam used in the Recalled Devices.

263.    The facts that Defendants misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendants' Recalled Devices.

264.    Defendants' misrepresentations, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and has the capacity to deceive a reasonable consumer.

265.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendants' Recalled Devices.

266.    Because the characteristics of the Recalled Devices were not as represented, and those characteristics are material to a reasonable consumer of the Recalled Devices, the value of the Recalled Devices was less than the value the Recalled Devices would have had the Recalled Devices actually possessed the characteristics that were represented.

267.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased or leased Defendants' Recalled Devices or would have paid less for those products.

268.    Instead, as a result of Defendants' misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented which denied them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

269.    Plaintiffs and Class members could not have avoided these injuries. Because Defendants were the sole source of material information that Defendants failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

## EIGHTH CLAIM FOR RELIEF

### ALABAMA DECEPTIVE TRADE PRACTICES ACT—UNCONSCIONABILITY

### Ala. Code §§ 8-19-1 *et seq.*

**(on behalf of Plaintiff Vickey Hunter, Plaintiff Keith Penberthy and the Alabama Subclass)**

212.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

213.    Plaintiffs Vickey Hunter and Keith Penberthy bring this claim individually and on behalf of the members of the Alabama Subclass.

214.    This claim is brought in the alternative to any common law claim for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under the Alabama Deceptive Trade Practices Act.

215.    At all relevant times, members of the Alabama Subclass were natural people who purchased Defendants' Recalled Devices detailed above for personal, family or household use.

270.    At all relevant times, Defendants were either a natural person or corporation, trust, partnership, incorporated or unincorporated association or some other legal entity.

271.    The Recalled Devices are "goods" as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(3).

272.    At all relevant times, Defendants were engaged in Trade or Commerce as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(8).

273.    The Alabama Deceptive Trade Practices Act declares that engaging in unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce is unlawful. *See* Ala. Code § 8-19-5.

274.    The Alabama Deceptive Trade Practices Act further that any person who commits an unlawful practice under this chapter and thereby causes monetary damage to a consumer, shall be liable to each consumer for (1) Any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater; or (2) Up to three times any actual damages. *See* Ala. Code § 8-19-10.

275.    Defendants, by and through their employees, agents, and/or servants, and in connection with its advertising and sale of the Recalled Devices detailed above, knowingly engaged in deceptive and unconscionable acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

216.    Defendants knew that their statements were false or that their conduct was unconscionable because there was an absence of meaningful choice on Plaintiffs' part.

217.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendants' Recalled Devices.

218.    Because the characteristics of Defendants' Recalled Devices were not as represented, and those characteristics are material to a reasonable consumer of the Recalled Devices, the value of the Recalled Devices was less than the value the Recalled Devices would have had if the Recalled Devices had actually possessed the characteristics that were represented.

219.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased or leased Defendants' Recalled Devices or would have paid less for those products.

220.    Instead, as a result of Defendants' misrepresentations and/or omissions, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented, denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the Recalled Devices they received, causing them out-of-pocket damages.

221.    Plaintiffs and Class members could not have avoided these injuries. Because Defendants were the sole source of material information that Defendants failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

222.    Plaintiffs provided Defendants pre-suit notice pursuant to Ala. Code § 8-19-10(e) by sending a certified letter, return receipt requested, containing the basis of Plaintiffs' claims on July 26, 2021.

## NINTH CLAIM FOR RELIEF

## ARIZONA CONSUMER FRAUD ACT

### Ariz. Rev. Stat. Ann. § 44-1521

**(on behalf of Plaintiff Robert Brown and the Arizona Subclass)**

276.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

277.     Arizona's Consumer Fraud Act prohibits the "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

278.     At all relevant times, members of the Arizona Subclass and Defendants were either natural people or the person's legal representative, a partnership or domestic or foreign corporation, a company, trust, business entity or association or an agent, employee, salesman, partner, officer, director, member, stockholder, associate or trustee.

279.     The Recalled Devices are "merchandise" as defined by the Arizona Consumer Fraud Act. *See* Ariz. Rev. Stat. Ann. § 44-1521(5).

280.     At all relevant times, the Plaintiffs' and the Arizona Subclasses purchases or leases of Defendants' Recalled Devices were "sale(s)" as defined by the Arizona Consumer Fraud Act. *See* Ariz. Rev. Stat. Ann § 44-1521(7).

281.      Defendants willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they

48

intended others to rely upon in connection with the sale and advertisement of "merchandise" in violation of Ariz. Rev. Stat. Ann. §44-1522(A) as described in the allegations above.

282.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the Arizona Subclass.

283.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and are so oppressive that the Arizona Subclass has little alternative but to submit and causes consumers substantial injury.

284.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting individuals' from avoidable dangers and that the manufacturer of merchandise is responsible for ensuring that their merchandise or products are fit for human use.

285.    The Arizona Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

286.    Plaintiffs, members of the Class, and members of the Arizona Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

287.    Instead, as a result of Defendants' misrepresentation, Plaintiffs, members of the Class, and members of the Arizona Subclass suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented, denying them of the benefit of their bargain; and (2) Plaintiffs, members of the

Class, and members of the Arizona Subclass paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

288.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described.

## TENTH CLAIM FOR RELIEF

## CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

## Cal. Civ. Code §§ 1750 *et seq.*

### (on behalf of Plaintiff Ibrahim, Plaintiff Rice, and the California Subclass)

289.    Plaintiffs incorporate the forgoing allegations as if fully set forth herein.

290.    Plaintiffs provided Defendants, via certified mail, return receipt requested, notice of the specific complaint and damages in accordance with Cal. Civ. Code § 1761 on July 26, 2021. Subject to the response, if any, by Defendants within 30 days of the notice, Plaintiffs, on behalf of themselves and the Classes, shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under the CLRA.

291.    Plaintiffs, members of the Class, and members of the California Subclass are each are "consumer[s]" as that term is defined in Cal. Civ. Code § 1761(d).

292.    The Recalled Devices are "goods," as that term is defined in Cal. Civ. Code § 1761(a).

293.    Each Defendant is a "person" as that term is defined in Cal. Civ. Code § 1761(c).

294.    Plaintiffs' and each proposed Class and Subclass member's purchase of Defendants' products constituted a "transaction" as that term is defined in Cal. Civ. Code § 1761(e).

295.    Defendants' conduct alleged herein violates the following provisions of

California's Consumer Legal Remedies Act (the "CLRA"):

> (a) Cal. Civ. Code § 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Recalled Devices were and are safe for use by individuals when in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

> (b) Cal. Civ. Code § 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Recalled Devices were of a particular standard, quality, or grade, when they were of another;

> (c) Cal. Civ. Code § 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Recalled Devices with intent not to sell them as advertised; and

> (d) Cal. Civ. Code § 1770(a)(16), by representing that the Recalled Devices have been supplied in accordance with previous representations when they have not.

296.    As a direct and proximate result of these violations, Plaintiffs, members of the

Class, and members of the California Subclass, have been harmed by the misleading marketing

described herein in any manner in connection with the advertising and sale of the Recalled

Devices.

297.    Plaintiffs, members of the Class, and members of the California Subclass seek

relief for the injuries they have suffered as a result of Philips' practices, as provided by the

CLRA and applicable law.

51

## ELEVENTH CLAIM FOR RELIEF

### CALIFORNIA'S FALSE ADVERTISING LAW

### Cal. Bus. & Prof. Code §§ 17500 *et seq*.

### (on behalf of Plaintiff Ibrahim, Plaintiff Rice, and the California Subclass)

298.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

299.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

300.     As set forth herein, Defendants' claims that the Recalled Devices were and are safe for human use were false because the Recalled Devices in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices, and were likely to deceive the public.

301.     Philips' claims that the Recalled Devices were and are safe for human use were and are untrue and misleading because they failed to mention the presence of an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

302.     Philips knew, or reasonably should have known, that all these claims were untrue or misleading.

303.     Prospective injunctive relief is necessary given Philips' refusal to offer details as to when they intend to repair the Recalled Devices.

304.     Plaintiffs, members of the Class, and members of the California Subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Recalled Devices and replacement devices.

## TWELFTH CLAIM FOR RELIEF

### CALIFORNIA'S UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### (on behalf of Plaintiff Ibrahim, Plaintiff Rice, and the California Subclass)

305.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

306.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

307.    Defendants fraudulently represented that the Recalled Devices were and are safe for human use when in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

308.    As alleged herein, Philips unlawfully advertised the Recalled Devices using false or misleading claims, such that Philips' actions as alleged herein violate at least the following laws:

(a) The CLRA, Cal. Bus. & Prof. Code § 1750 *et seq.*; and

(b) The False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*

309.    Philips' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Recalled Devices is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

310.    Philips' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Recalled Devices is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

311.    Philips' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Recalled Devices is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

312.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order requiring Philips to immediately repair or replace the Recalled Devices.

313.    On behalf of themselves, the Class, and the California Subclass, Plaintiffs Ibrahim and Rice also seek an order for the restitution of all monies from the sale of the Recalled Devices, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## THIRTEENTH CLAIM FOR RELIEF

### COLORADO CONSUMER PROTECTION ACT

### Colo. Rev. Stat. §§ 6-1-105(1), *et seq.*

### (on behalf of Plaintiff Tinianow, Plaintiff Workman, and the Colorado Subclass)

314.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

315.    Plaintiff Tinianow and Plaintiff Workman bring this claim individually and on behalf of the Colorado Subclass.

316.    The Recalled Devices are "goods" as the term is used in the Colorado Consumer Protection Act. *See* Colo. Rev. Stat. §§ 6-1-105(1), *et seq.*

317.    At all relevant times, Defendants were engaged in business in Colorado as the term is used in the Colorado Consumer Protection Act. *See* Colo. Rev. Stat. §§ 6-1-105(1), *et seq.*

318.     The Colorado Consumer Protection Act defines deceptive trade practices to include, among other things, when, in the course of the person's business, vocation, or occupation, the person: (a) either knowingly or recklessly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; (b) represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; (c) advertises goods, services, or property with intent not to sell them as advertised; (d) fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction; and (e) either knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice. *See* Colo. Rev. Stat. §§ 6-1-105(1), *et seq*.

319.     The Colorado Consumer Protection Act further provides for a civil action against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article by any person who is an actual or potential consumer of the Defendants' goods, services, or property and is injured as a result of such deceptive trade practice.

320.     At all relevant times, members of the Colorado Subclass and Defendants were either individuals, corporations, business trusts, estates, trusts, partnerships, unincorporated associations, or any other legal or commercial entity.

321.     In marketing and selling the Recalled Devices, Defendants either knowingly or recklessly made a false representation as to the characteristics of the Recalled Devices.

322.    In marketing and selling the Recalled Devices, Defendants either knowingly or recklessly represented that the Recalled Devices were of a particular standard, quality, or grade, when Defendants' knew or should know that they were of another.

323.    In marketing and selling the Recalled Devices, Defendants either knowingly or recklessly failed to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

324.    In marketing and selling the Recalled Devices, Defendants either knowingly or recklessly engaged in an unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.

325.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in committed by Defendants' in the course of Defendants' business.

326.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above significantly impact the public as they are actual or potential consumers of Defendants' goods.

327.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the Colorado Subclass.

328.    Defendants' misrepresentations and omissions in the sale the Recalled Devices were unfair in that they violate the well-established public policies of protecting individuals from avoidable dangers and that the manufacturer of goods is responsible for ensuring that they are fit for human use.

329.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair because they offend public policy, and are so oppressive that the Colorado Subclass has little alternative but to submit and causes consumers substantial injury.

330.     Defendants' knowing misrepresentations and omissions in the sale of the Recalled Devices above had the capacity to mislead consumers.

331.     Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices products or would have paid less for the Recalled Devices.

332.     Instead, as a result of Defendants' misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented, denying them of the benefit of their bargain; and (2) Plaintiffs, Class members, and Colorado Subclass members paid more than the fair market value of the Recalled Devices they received, causing them out-of-pocket damages.

333.     The Colorado Subclass has suffered economic injury as a direct and proximate result of the Defendants' conduct.

334.     As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described.

## FOURTEENTH CLAIM FOR RELIEF

## CONNECTICUT UNFAIR TRADE PRACTICES ACT

## Conn. Gen. Stat. §§ 42-110a *et seq.*

### (on behalf of Plaintiff Goldstein and the Connecticut Subclass)

335.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

336.    Plaintiff Goldstein and Connecticut Subclass Members are residents of the State of Connecticut.

337.    Each Defendant is a "person" as defined by Conn. Gen. Stat. Ann. § 42-110(a)(3).

338.    Plaintiff Goldstein and Connecticut Subclass Members are actual or potential consumers of Recalled Devices.

339.    At all times mentioned herein, Philips engaged in "trade" or "commerce" in Connecticut as defined by Conn. Gen. Stat. § 42-110(a)(4), in that they engaged in the "advertising," "sale," and "distribution" of any "goods," "services," "property," "articles," "commodities," or "things of value" in Connecticut.

340.    The Connecticut Unfair Trade Practices Act (CUTPA) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S. § 42-110b(a).

341.    For the reasons discussed herein, Philips violated CUTPA by engaging in the herein described deceptive or unfair acts or practices proscribed by § 42-110a *et seq.* Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

342.    Philips repeatedly advertised on the labels for Recalled Devices, on its websites, and through national advertising campaigns, that Recalled Devices were and are safe for use by individuals. Philips failed to disclose the material information that Recalled Devices contained an unsafe material, PE-PUR Foam, which could cause a Recalled Device to suffer adverse health effects from use of the Recalled Devices.

343.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff and Connecticut Subclass Members in the form of the loss or diminishment of value of Recalled Devices Plaintiff and Connecticut Subclass Members purchased, which allowed Philips to profit at the expense of Plaintiff and Connecticut Subclass Members. The injuries to Plaintiff and Connecticut Subclass Members were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

344.    Plaintiff Goldstein and Connecticut Subclass Members seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by C.G.S. § 42-110g and applicable law.

## FIFTEENTH CLAIM FOR RELIEF

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### Fla. Stat. §§ 501.201 *et seq.*

### (on behalf of Plaintiff Ronald Little, Plaintiff Daniel MacLeod, Plaintiff Jerry Pouncey and the Florida Subclass)

345.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

346.    Plaintiff Ronald Little, Plaintiff Daniel MacLeod, Plaintiff Jerry Pouncey, and Florida Subclass members are "consumers," as defined by Fla. Stat. § 501.203(7), the products

sold by Philips are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

347.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204. provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

348.    For the reasons discussed herein, Philips violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, et seq. Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

349.    At all times mentioned herein, Philips engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered for sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

350.    Philips repeatedly advertised, both on the labels for the Recalled Devices, on its websites, and through a national advertising campaigns, among other items, that the Recalled Devices were and are safe for use by individuals when in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

351.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the Recalled Devices contained an unsafe material that could cause adverse health effects. As a

direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiff Ronald Little, Plaintiff Daniel MacLeod, Plaintiff Jerry Pouncey and the Florida Subclass suffered damages by purchasing the Recalled Devices because they would not have purchased the Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam.

352.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff Ronald Little, Plaintiff Daniel MacLeod, Plaintiff Jerry Pouncey and the Florida Subclass in the form of the loss or diminishment of value of the Recalled Devices, which allowed Defendants to profit at the expense of Plaintiff Ronald Little, Plaintiff Daniel MacLeod, Plaintiff Jerry Pouncey and the Florida Subclass. The injuries Plaintiff Ronald Little, Plaintiff Daniel MacLeod, Plaintiff Jerry Pouncey and the Florida Subclass were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

353.    Plaintiff Ronald Little, Plaintiff Daniel MacLeod, Plaintiff Jerry Pouncey and the Florida Subclass seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by Fla. Stat. § 501.211 and applicable law.

## SIXTEENTH CLAIM FOR RELIEF

### GEORGIA FAIR BUSINESS PRACTICE ACT

### Ga. Code Ann. §§ 10-1-390, *et seq.*

### (on Behalf of Plaintiff Shomond Harris and the Georgia Subclass)

354.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

355.    Plaintiff Shomond Harris brings this claim individually and on behalf of the Georgia Subclass.

356.    Georgia's Fair Business Practices Act prohibits the "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."

357.    Georgia's Fair Business Practices Act specifically declares unlawful, among other things: (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; (2) representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; and (3) advertising goods or services with intent not to sell them as advertised.

358.    Georgia's Fair Business Practice Act further provides that any person who suffers injury or damages as a result of a violation of the Act, as a result of consumer acts or practices in violation of this part may bring an action against the person or persons engaged in such violations to seek equitable injunctive relief and to recover his or her general and exemplary damages sustained as a consequence thereof.

359.    At all relevant times, members of the Georgia Subclass and Defendants were either a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity.

360.    Defendants willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Ga. Code Ann. § 10-1-393(a) as described in the allegations above.

361.     Specifically, Defendants' acts and practices described above violated the Georgia Fair Business Practice Act's prohibitions on (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have in that Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to developing dangerous health conditions as a result of the dangerous PE-PUR Foam material; (2) representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another in that Defendants' the Recalled Devices carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing themselves to health risks from exposure to and the degradation of the PE-PUR Foam used in the Recalled Devices; and (3) advertising goods or services with intent not to sell them as advertised in that Defendants advertised the Recalled Devices as safe, legally compliant products which consumers could use without unduly exposing themselves to development of dangerous health condition as a result of their exposure to and the degradation of the PE-PUR Foam found in the Recalled Devices when Defendants knew the Recalled Devices were not.

362.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were acts or practices in the conduct of trade or commerce.

363.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

364.     Defendants' misrepresentations and omissions discussed above had the capacity to deceive and did deceive Plaintiffs and Class members.

365.     Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' products or would have paid less for those products.

366.     Instead, as a result of Defendants' misrepresentations, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

367.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it is inequitably enriching Defendants at the expense of the Georgia Subclass.

368.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it offends public policy, and is so oppressive that the Georgia Subclass has little alternative but to submit and causes consumers substantial injury.

369.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

370.     The Georgia Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

371.     As a direct and proximate result of the foregoing acts and practices, Defendants has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

372.     Plaintiffs provided Defendants pre-suit notice pursuant to Ga. Code Ann. § 10-1-399(b) by sending a certified letter, return receipt requested, containing the basis of Plaintiffs' claims on July 26, 2021.

**SEVENTEENTH CLAIM FOR RELIEF**

**KENTUCKY CONSUMER PROTECTION ACT**

**Ky. Rev. Stat. Ann. §§ 367.110, *et seq.***

**(on behalf of Plaintiff Mary Smith and the Kentucky Subclass)**

373.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

374.     Plaintiff Mary Smith brings this claim individually and on behalf of the Kentucky Subclass.

375.     Kentucky's Consumer Protection Act ("Kentucky CPA") prohibits any "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

376.     The Kentucky CPA further provides that any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair, false, misleading or deceptive act or practice may bring an action to recover actual damages.

377.     At all relevant times, members of the Kentucky Subclass and Defendants were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, or another legal entity.

378.     Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in

connection with trade or commerce in violation of Ky. Rev. Stat. Ann. § 367.170(1) as described in the allegations above.

379.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is an act or practice in the conduct of trade or commerce.

380.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

381.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

382.    Instead, as a result of Defendants' misrepresentation, Plaintiffs, Class members, and Kentucky Subclass members, suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented, denying them of the benefit of their bargain; and (2) Plaintiffs, Class members, and Kentucky Subclass members, paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

383.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it is inequitably enriching Defendants at the expense of the Kentucky Subclass.

384.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it offends public policy, and is so oppressive that the Kentucky Subclass has little alternative but to submit and causes consumers substantial injury.

385.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair in that it violates the well-established public policies of protecting

children from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

386.    The Kentucky Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

387.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

## EIGHTEENTH CLAIM FOR RELIEF

### MASSACHUSETTS CONSUMER PROTECTION ACT

### Mass. Gen. Laws ch. 93, §§1, *et seq.*

**(on behalf of the Nationwide Class, or alternatively Plaintiff Bartley and the Massachusetts Subclass)**

388.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

389.    Plaintiffs intend to assert and prosecute claims under the under the Massachusetts Consumer Protection Law, M.G.L.A. ch. 93A §1, *et seq.* ("MCPL") against Defendants. Defendant Philips NA's principal place of business is located in Cambridge, Massachusetts. Plaintiffs provided noticed pursuant to M.G.L. ch. 93A §9(3) to Defendant Philips NA on July 26, 2021. This Count provides notice that this Complaint shall be amended to demand all appropriate relief once the statutory period for a response has passed, subject to any response by Defendant Philips NA.

390.    Each Defendant is a "person" as defined by M.G.L.A. 93A §1(a).

391.    Plaintiffs, members of the Class, and members of the Massachusetts Subclass are actual or potential consumers of Recalled Devices.

67

392.     Philips engaged in engaged in deceptive or unfair acts or practices in the in the conduct of any trade or commerce, in violation of M.G.L. 93A §2(a), including but not limited to the following:

(a)     Knowingly or recklessly made a false representation as to the characteristics and use of Recalled Devices, in violation of 93A §2(a);

(b)     Represented that Recalled Devices are safe for use, in violation of 93A §2(a);

(c)     Advertised Recalled Devices with an intent not to sell it as advertised, in violation of 93A §2(a); and

(d)     Failed to disclose the material information that Recalled Devices contained unsafe PE-PUR Foam and that Recalled Devices users were at risk of suffering adverse health effects, in violation of 93A §2(a).

393.     As detailed, *infra*, Philips' deceptive trade practices significantly impacted the public, because there are millions of consumers of Recalled Devices, including Plaintiffs, members of the Class, and members of the Massachusetts Subclass.

394.     Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Recalled Devices without being aware that Recalled Devices were unsafe to use.  As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs and members of the Class and the Massachusetts Subclass suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it is unsafe to use.

395.     Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs, members of the Class, and members of the Massachusetts Subclass in the form of the loss or diminution of value of Recalled Devices Plaintiffs, members of the Class, and members of the Massachusetts Subclass purchased, which allowed Philips to profit at the expense of

Plaintiffs, members of the Class, and members of the Massachusetts Subclass.  The injuries to Plaintiffs, members of the Class, and members of the Massachusetts were to legally protected interests.  The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

396.    Plaintiffs, members of the Class, and members of the Massachusetts Subclass seek relief under 93A §9 including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

<u>**NINETEENTH CLAIM FOR RELIEF**</u>

**MINNESOTA'S UNLAWFUL TRADE PRACTICES ACT**

**Minn. Stat. Ann. § 325D13, *et seq.***

**(on behalf of Plaintiff Erickson and the Minnesota Subclass)**

397.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

398.    Each Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices ACT (MUTPA).

399.    Philips violated the MUTPA by knowingly misrepresenting the true quality and safety of the Recalled Devices by falsely claiming that the Recalled Devices are safe for use by individuals.

400.    Philips knew or should have known that the Recalled Devices were not in fact safe for human use because they contained the unsafe PE-PUR Foam which Philips knew could cause Recalled Device users to suffer adverse health effects.

401.    Philips' pattern of knowing misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive

Plaintiff Erickson and the Minnesota Subclass with respect to the safety of the Recalled Devices'
for use by individuals.

402.    Philips intended that Plaintiff Erickson and the Minnesota Subclass would rely on
Defendants' misrepresentations, concealment, warranties, deceptions, and/or omissions
regarding the safety of the Recalled Devices.

403.    Philips' conduct and omissions described herein occurred repeatedly in Philips'
trade or business and were capable of deceiving a substantial portion of the consuming public.

404.    The facts concealed or not disclosed by Philips were material facts in that Plaintiff
Erickson and any reasonable consumer would have considered them in deciding whether to
purchase and use the Recalled Devices. Had Plaintiff Erickson and the Minnesota Subclass
known the Recalled Devices did not have the quality advertised by Philips, they would not have
purchased or used the Recalled Devices.

405.    Plaintiff Erickson and the members of the Minnesota Subclass would not have
purchased or used the Recalled Devices at all had they known of the presence of the unsafe PE-
PUR Foam and the risk of suffering adverse health effects resulting from the use of the Recalled
Devices that do not conform to Philips' claims.

406.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff Erickson and the
Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs,
and any other just and proper relief available thereunder for Defendants' violations of the
MUTPA.

## TWENTIETH CLAIM FOR RELIEF

### MINNESOTA'S UNIFORM DECEPTIVE TRADE PRATICES ACT

### Minn. Stat. § 325D.44, *et seq.*

#### (on behalf of Plaintiff Erickson and the Minnesota Subclass)

407.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

408.    Each Defendant is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

409.    Defendants willingly engaged in deceptive trade practices, in violation of the MUDTPA, by knowingly misrepresenting the true quality of the Recalled Devices by falsely claiming that the Recalled Devices were and are safe to use.

410.    Philips knew or should have known that the Recalled Devices were not safe to use because they contain the dangerous PE-PUR Foam which can cause adverse health effects which does not conform to the packaging claims.

411.    Philips' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Erickson and the Minnesota Subclass with respect to the Recalled Devices' safety, uses, benefits, standards, quality, grade, and suitability for human use.

412.    Philips intended that Plaintiff Erickson and the Minnesota Subclass would rely on Philips' misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Recalled Devices' safety, uses, benefits, standards, quality, grade, and suitability for human use.

413.    Philips' conduct and omissions described herein occurred repeatedly in Philips' trade or business and were capable of deceiving a substantial portion of the consuming public.

414.    The facts concealed or not disclosed by Philips were material facts in that Plaintiff Erickson and any reasonable consumer would have considered them in deciding whether to purchase the Recalled Devices. Had Plaintiff Erickson known the Recalled Devices did not have the quality advertised by Philips, she would not have purchased the Recalled Devices.

415.    Philips intended that Plaintiff Erickson and the Minnesota Subclass would rely on the deception by purchasing the Recalled Devices, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

416.    As a direct and proximate result of Philips' conduct, Plaintiff Erickson and the Minnesota Subclass have suffered actual damages in that they purchased the Recalled Devices that were worth less than the price they paid and are now worthless.

417.    Plaintiff Erickson and the members of the Minnesota Subclass would not have purchased the Recalled Devices at all had they known of the presence of PE-PUR Foam its dangers that do not conform to the packaging.

418.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff Erickson and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' violations of the MUDTPA.

## TWENTY-FIRST CLAIM FOR RELIEF

### MINNESOTA FALSE STATEMENT IN ADVERTISING ACT

### Minn. Stat. § 325F.67, *et seq.*

### (on behalf of Plaintiff Erickson and the Minnesota Subclass)

419.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

420.    Plaintiff Erickson purchased "goods," specifically one of the Recalled Devices discussed herein, and is a "person" within the meaning of the False Statement in Advertising Act (FSAA).

421.    Plaintiff Erickson purchased one of the Recalled Devices through Philips' statements on the packaging that contained numerous material assertions representations, and statements of fact made, published, disseminated, circulated, and placed before the public by Philips that were untrue, deceptive, and misleading.

422.    By engaging in the conduct herein, Philips violated and continues to violate Minn. Stat. § 325F.67.

423.    Philips' misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example, representations that the Recalled Devices are safe for human use.

424.    Philips knew or should have known that the Recalled Devices did not have the quality and safety described above because they contained PE-PUR Foam, a dangerous material which does not conform to the packaging claims.

425.    Philips' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Erickson and

the Minnesota Subclass with respect to the Recalled Devices' safety, uses, benefits, standards, quality, grade, and suitability for human use.

426.    Philips' conduct and omissions described herein occurred repeatedly in Philips' trade or business and were capable of deceiving a substantial portion of the consuming public.

427.    The facts concealed or not disclosed by Philips were material facts in that Plaintiff Erickson and any reasonable consumer would have considered them in deciding whether to purchase the Recalled Devices. Had Plaintiff Erickson known the Recalled Devices did not have the quality advertised by Philips, she would not have purchased one of the Recalled Devices.

428.    Philips intended that Plaintiff Erickson and the Minnesota Subclass would rely on the deception by purchasing the Recalled Devices, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

429.    Philips' unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.

430.    As a direct and proximate result of Philips' conduct, Plaintiff Erickson and the Minnesota Subclass have suffered actual damages in that they purchased the Recalled Devices that were worth less than the price they paid and are now worthless.

431.    Plaintiff Erickson and the members of the Minnesota Subclass would not have purchased the Recalled Devices at all had they known of the presence of the non-conforming PE-PUR Foam and its attendant dangers.

432.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiff Erickson and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' violations of the FSAA.

## TWENTY-SECOND CLAIM FOR RELIEF

### MINNESOTA PREVENTION OF CONSUMER FRAUD ACT

### Minn. Stat. § 325F.69, *et seq.*

#### (on behalf of Plaintiff Erickson and the Minnesota Subclass)

433.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

434.     Plaintiff Erickson is a resident of the State of Minnesota.

435.     Philips is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act (MPCFA).

436.     Philips' representations with respect to the Recalled Devices were made in connection with the sale of the Recalled Devices to Plaintiff Erickson and the Minnesota Subclass.

437.     Philips knowingly acted, used, and employed fraud, false pretenses, false promises, misrepresentations, misleading statements, and deceptive practices in connection with the sale of its Recalled Devices. Specifically, Philips falsely represented that its Recalled Devices were safe for human use.

438.     Philips knew or should have known that the Recalled Devices did not have the quality described above because they contained PE-PUR Foam, a dangerous material that does not conform to the packaging claims. Philips intended for Plaintiff Erickson and the Minnesota Subclass to rely on and accept as true these representations in deciding whether to purchase the Recalled Devices.

439.     Philips' unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Recalled Devices' safety, quality, fitness for use and, by extension, the true value of the Recalled Devices. Plaintiff Erickson and the Minnesota Subclass relied on, and were

in fact deceived by, Philips' representations and omissions respect to the Recalled Devices'

safety, quality, and fitness for use in deciding to purchase them over competitors' Recalled

Devices.

440.    Philips unlawful conduct is continuing, with no indication that Defendants intend

to cease this fraudulent course of conduct.

441.    As a direct and proximate result of Philips' conduct, Plaintiff Erickson and the

Minnesota Subclass have suffered actual damages in that they purchased the Recalled Devices

that were worth less than the price they paid.

442.    Plaintiff Erickson and the members of the Minnesota Subclass would not have

purchased the Recalled Devices at all had they known of the presence of these non-conforming

PE-PUR Foam material.

443.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.69, Plaintiff Erickson and the

Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs,

and any other just and proper relief available thereunder for Philips' violations of the MPCFA.

## TWENTY-THIRD CLAIM FOR RELIEF

### NEVADA DECEPTIVE TRADE PRACTICES ACT

### Nev. Rev. Stat. §§ 598.0903, *et seq.*

### (on Behalf of Plaintiff Davis, Plaintiff Reisenwitz, and the Nevada Subclass)

444.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

445.    Plaintiff Davis and Plaintiff Reisenwitz bring this Count individually and on

behalf of the Nevada Subclass.

446.    Nevada's Private Right of Action for Consumer Frauds Act prohibits any "false

representation in a transaction" in the course of a business or operation.

447.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in the course of the Defendants' business in violation of Nev. Rev. Stat. § 598.0915 as described in the allegations above.

448.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is an act or practice in the conduct of trade or commerce.

449.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

450.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it is inequitably enriching Defendants at the expense of the Nevada Subclass.

451.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it offends public policy, and is so oppressive that the Nevada Subclass has little alternative but to submit and causes consumers substantial injury.

452.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

453.    The Nevada Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

454.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## TWENTY-FOURTH CLAIM FOR RELIEF

### OHIO CONSUMER SALES PROTECION ACT

### Ohio Rev. Code Ann. §§ 1345, *et seq.*

### (on behalf of Plaintiff Johnson, Plaintiff Donna Williams, and the Ohio Subclass)

455.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

456.    Plaintiff Johnson and Plaintiff Donna Williams bring this claim individually and on behalf of the Ohio Subclass.

457.    Ohio's Consumer Sales Protection Act ("Ohio CSPA") prohibits any "unfair or deceptive act or practice in connection with a consumer transaction."

458.    At all relevant times, members of the Ohio Subclass and Defendants were "persons" within the meaning of the Ohio CSPA. *See* Ohio Rev. Code Ann. § 1345.01(B).

459.    Specifically, the Ohio CSPA forbids: (1) representing that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; (2) representing hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not; and (3) knowingly providing a disclosure that includes a material misrepresentation. *See* Ohio Rev. Code Ann. § 1345.02.

460.    Further, the Ohio CSPA unconscionable acts or practices in connection with a consumer transaction, including but not limited to: (1) knowingly taking advantage of the inability of the consumer reasonably to protect the consumer's interest because of the consumer's ignorance, and (2) knowingly making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

461. Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with a consumer transaction (as defined by Ohio Rev. Code Ann. § 1345.01(A)) in violation of Ohio Rev. Code Ann. § 1345.02(A) as described in the allegations above.

462. As a result, Defendants' conduct violates several provisions of the Ohio CSPA, including but not limited to:

    (a) Section 1345.02(B)(1): Representing that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have —here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of developing dangerous health conditions;

    (b) Section 1345.02(B)(7): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not—as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of developing dangerous health conditions;

    (c) Section 1345.03(B)(1): Knowingly taking advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's ignorance—the Defendants had knowledge of consumer complaints and the dangers posed by the PE-PUR Foam in the Recalled Devices, which information:

        i. Defendants monitor in the regular operation of its business;

        ii. Is directly related to consumers' interest; and

        iii. Is not within the ability of the consumer to reasonably measure and analyze.

    (d) Section 1345.03(B)(6): Knowingly making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment—Defendants' branding of the Recalled Devices, including but not limited to opinions and other descriptive language, carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves

to the risk of developing dangerous health conditions, which branding the Defendants knew consumers would rely upon when purchasing the Recalled Devices.

463.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is an act or practice in the conduct of trade or commerce that Defendants intended to induce consumers to buy the Recalled Devices.

464.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Ohio Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials that could cause Recalled Device users to develop dangerous health conditions. Plaintiffs and the Ohio Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

465.    If Defendants had disclosed that the Recalled Devices contained toxic materials, such as PE-PUR Foam, that were dangerous to Recalled Device users' health and was of substandard quality, Plaintiffs and the Ohio Subclass would have been aware that the Recalled Devices contained toxic PE-PUR Foam and was of substandard quality, and Plaintiffs and the Ohio Subclass would not have purchased Defendants' Recalled Devices.

466.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for those products.

467.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

468.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they are inequitably enriching Defendants at the expense of the Ohio Subclass.

469.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they offend public policy, and are so oppressive that the Ohio Subclass has little alternative but to submit and causes consumers substantial injury.

470.     The Ohio Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

471.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair in that it violates the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that their products are fit for human use.

472.     As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations.

## TWENTY-FIFTH CLAIM FOR RELIEF

### OKLAHOMA CONSUMER PROTECTION ACT

#### Okla. Stat. tit. 15, §§ 751, *et seq.*

#### (on behalf of Plaintiff Deck and the Oklahoma Subclass)

473.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

474.     Plaintiff Darrell Deck brings this claim individually and on behalf of the Oklahoma Subclass.

475.     At all relevant times, members of the Oklahoma Subclass and Defendants were "persons" within the meaning of the Oklahoma Consumer Protection Act ("Oklahoma CPA"). *See* Okla. Stat. tit. 15, § 752(1).

476.     Oklahoma's CPA" prohibits "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and any "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." *See* Okla. Stat. tit. 15, § 752(14).

477.     Specifically, the Oklahoma CPA forbids: (1) making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction; (2) making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith; (3) representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another; and (4) committing an unfair or deceptive trade practice as defined in Okla. Stat. tit. 15, § 752.

478.     Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material reasonably expected to deceive or mislead consumers in violation of Okla. Stat. tit. 15, § 753(20) as described in the allegations above.

479.     As a result, Defendants' conduct violates several provisions of the Oklahoma CPA, including but not limited to:

(a) Section 15-753(2): Making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves the risk of exposure to dangerous toxic materials such as PE-PUR Foam;

(b) Section 15-753(5): Making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith—as above, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves the risk of exposure to dangerous toxic materials such as PE-PUR Foam; and

(c) Section 15-753(7): Making a false representation, knowingly or with reason to know, that the Recalled Devices were of a particular standard, style or model, when they were of another—here, Defendants' representations concerning the Recalled Devices carried with them the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves the risk of exposure to dangerous toxic materials such as PE-PUR Foam;

(d) Section 15-753(8): Advertising, knowingly or with reason to know, the Recalled Devices with intent not to sell the Recalled Devices as advertised—here, Defendants' advertisements concerning the Recalled Devices carried with them the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves the risk of exposure to dangerous toxic materials such as PE-PUR Foam;

480.    Defendants' misrepresentations, omissions, and advertisements in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy Recalled Devices.

481.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Oklahoma Subclass reasonably understood Defendants' misrepresentations, omissions, and advertisements to mean that the Recalled Devices did not

contain toxic materials such as PE-PUR Foam that are dangerous to consumers' health. Plaintiff and the Oklahoma Subclass also reasonably understood Defendants' misrepresentations, omissions, and advertisements to mean that the Recalled Devices were not of substandard quality.

482.    If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to consumers' health and were of substandard quality, Plaintiffs and the Oklahoma Subclass would have been aware that the Recalled Devices contained excessive toxic materials such as PE-PUR Foam and were of substandard quality, and Plaintiffs and the Oklahoma Subclass would not have purchased Defendants' Recalled Devices.

483.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

484.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

485.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriching Defendants at the expense of the Oklahoma Subclass.

486.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they offends public policy, and are so oppressive that the Oklahoma Subclass has little alternative but to submit and causes consumers substantial injury.

487.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair in that they violate the well-established public policies of protecting

consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that their products are fit for human use.

488.     The Oklahoma Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

489.     As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

## TWENTY-SIXTH CLAIM FOR RELIEF

## PENNSYLVANIA UNFAIR TRADE PRACTICES

## AND CONSUMER PROTECTION LAW

### 73 Pa. Cons. Stat. Ann. §§201-1, *et seq.*

**(on behalf of the Nationwide Class, Plaintiff Scancella, and the Pennsylvania Subclass)**

490.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

491.    At all times mentioned herein, Philips engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. §201-2(3), in that they advertised, offered for sale, and sold goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services," "property," "article[s]," "commodit[ies]," or "thing[s] of value" in Pennsylvania.

492.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. §201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

493.    For the reasons discussed herein, Philips violated and continues to violate the UTCPL by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by UTCPL §§201-1, *et seq.* Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

494.    Philips repeatedly advertised on the labels and packing for the Recalled Devices, on Philips' websites, and through national advertising campaigns, among other items, that the Recalled Devices were safe and fit for human use. Philips failed to disclose the material

information that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use.

495.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use.  As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs, members of the Class, and the Pennsylvania Subclass suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam which can cause a number of adverse health effects, including cancer.

496.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs and members of the Class in the form of the loss or diminishment of value of the Recalled Devices Plaintiffs and Class Members purchased, which allowed Defendants to profit at the expense of Plaintiffs and Class Members.  The injuries to Plaintiffs and members of the Class were to legally protected interests.  The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

497.    Plaintiffs and Class Members seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by 73 Pa. Cons. Stat. Ann. §201-9.2 and applicable law.

## TWENTY-SEVENTH CLAIM FOR RELIEF

### TENNESSEE CONSUMER PROTECTION ACT

### Tenn. Code Ann. §§ 47-18-102 *et seq.*

### (on behalf of Plaintiff Jeffrey Hill and the Tennessee Subclass)

498.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

499.     Plaintiff Jeffrey Hill brings this claim individually and on behalf of the Tennessee Subclass.

500.     At all relevant times, Plaintiffs, the Tennessee Subclass, and Defendants were "persons" within the meaning of Tenn. Code Ann. § 47-18-103(14).

501.     The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits unfair or deceptive actions or practices affecting the conduct of any trade or commerce.

502.     Defendants willfully engaged in unfair or deceptive actions or practices affecting the conduct of trade or commerce as described in the allegations above.

503.     As a result, Defendants' conduct violates several provisions of the Tennessee CPA, including but not limited to:

    (a) Section 47-18-104(b)(2): causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services—here, Defendants' willful failure to disclose to consumers that the Recalled Devices contained toxic materials such as PE-PUR Foam caused the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients and/or materials in that it causes a likelihood that consumers will believe the Recalled Devices do not contain toxic materials such as PE-PUR that are dangerous to their health;

    (b) Section 47-18-104(b)(5):  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing

themselves to toxic materials such as PE-PUR Foam that could cause them to develop dangerous health conditions; and

(c) Section 47-18-104(b)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendants' Recalled Devices carried with them the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves to toxic materials such as PE-PUR Foam that could cause them to develop dangerous health conditions.

504. Defendants' omissions in violation of the Tennessee CPA were likely to mislead an ordinary consumer. Plaintiffs and the Tennessee Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to consumers' health. Plaintiffs and the Tennessee Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

505. If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to consumers' health and were of substandard quality, Plaintiffs and the Tennessee Subclass would have been aware that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to consumers' health and were of substandard quality and Plaintiffs and the Tennessee Subclass would not have purchased Defendants' Recalled Devices.

506. Defendants' omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

507. Plaintiffs and the Tennessee Subclass relied to their detriment on Defendants' omissions in purchasing Recalled Devices.

## TWENTY-EIGHTH CLAIM FOR RELIEF

### TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT

### Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*

### (on behalf of Plaintiff Ronald Brown, Plaintiff Custer, Plaintiff Johnston, Plaintiff Debra Williams, and the Texas Subclass)

508.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

509.    Plaintiff Ronald Brown, Plaintiff Custer, Plaintiff Johnston, and Plaintiff Debra Williams, bring this claim individually and on behalf of the Texas Subclass.

510.    At all relevant times, members of the Texas Subclass and Defendants were "persons" within the meaning of the Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPCPA"). *See* Tex. Bus. & Com. Code Ann. § 17.45(3).

511.    Texas' DTPCPA prohibits any "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce" or any "act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

512.    Among other things, the Texas DTPCPA prohibits: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) representing such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (4) representing that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not.

513.     Defendants willfully and purposefully engaged in deceptive, unconscionable, and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Tex. Bus. & Com. Code Ann. §§ 17.50(a)(1)(B) and (3) as described in the allegations above.

514.     As a result, Defendants' conduct violates several provisions of the Texas UDTPA, including but not limit d to:

> (a) Section 17.46(b)(2): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendants' willful failure to disclose to consumers that the PE-PUR Foam in the Recalled Devices was dangerous to consumers' health while at the same time asserting that the Recalled Devices were beneficial to consumers' healthy causes the likelihood of confusion or misunderstanding in that it causes a likelihood that consumers will believe the Recalled Devices do not contain toxic materials such as PE-PUR Foam that are dangerous to consumers health. This provision does not require proof of actual confusion or misunderstanding;

> (b) Section 17.46(b)(5): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves to toxic materials such as PE-PUR Foam that could cause them to develop dangerous health conditions; and

> (c) Section 17.46(b)(7): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without exposing themselves to toxic materials such as PE-PUR Foam that could cause them to develop dangerous health conditions.

515.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is an act or practice in the conduct of trade or commerce that Defendants intended to induce consumers to buy the Recalled Devices.

91

516.     Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Texas Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are consumers' health. Plaintiffs and the Texas Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

517.     If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that could cause consumers to develop dangerous health conditions and were of substandard quality, Plaintiffs and the Texas Subclass would have been aware that the that the Recalled Devices contained toxic materials such as PE-PUR Foam that could cause consumers to develop dangerous health conditions and were of substandard quality, and Plaintiffs and the Texas Subclass would not have purchased Defendants' Recalled Devices.

518.     Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known that the Recalled Devices contained toxic materials such as PE-PUR Foam that could cause consumers to develop dangerous health conditions and were of substandard quality they would not have purchased Defendants' Recalled Devices or would have paid less for those products.

519.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

520.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendants at the expense of the Texas Subclass.

521.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it offends public policy, and is so oppressive that the Texas Subclass has little alternative but to submit and causes consumers substantial injury.

522.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

523.    The Texas Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

524.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

525.    Plaintiff Ronald Brown, Plaintiff Michael Custer, Plaintiff Jerry Johnston, and Plaintiff Debra Williams provided Defendants pre-suit notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 by sending certified letters, return receipt requested, containing the basis of each Plaintiffs' claims on July 22, 2021. Tracking information indicates these letters were delivered to Defendants on July 26, 2021.

## TWENTY-NINTH CLAIM FOR RELIEF

### WASHINGTON CONSUMER PROTECTION ACT

### Wash. Rev. Code §§ 19.86.010, *et seq.*

### (on behalf of Plaintiff Todd Mackey and the Washington Subclass)

526.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

527.    Plaintiff Todd Mackey brings this claim individually and on behalf of the Washington Subclass.

528.    Washington's Consumer Protection Act ("Washington CPA") prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

529.    At all relevant times, members of the Washington Subclass and Defendants were "persons" within the meaning of the Washington CPA. *See* Wash. Rev. Code § 19.86.010(1).

530.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Wash. Rev. Code § 19.86.020 as described in the allegations above.

531.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce.

532.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest in that Defendants' acts: (1) violated the specific legislative declaration of public interest impact described by Wash. Rev. Code § 19.86.920; (2) injured other persons as alleged above; (3) had the capacity to injure other persons; and (4) continues to have the capacity to injure other persons.

94

533.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendant sat the expense of the Washington Subclass.

534.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they offend public policy, and are so oppressive that the Washington Subclass has little alternative but to submit and cause consumers substantial injury.

535.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair in that it violates the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

536.     The Washington Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

537.     As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Philips as to each and every count, including:

A. An order certifying this action and the Class and State Subclasses requested herein as a class action, designating Plaintiffs as the representatives of the Class and State Subclasses, and appointing Plaintiffs' counsel as counsel to the Class and State Subclasses;

B. An order declaring that Philips' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; (iv) fraud by omission; and (v) unfair and deceptive business practices in violation of Illinois, Indiana, Maryland, Massachusetts, New York, and Pennsylvania consumer protection statutes, and that Philips is liable to Plaintiffs, members of the Class, and members of the State Subclasses, as described herein, for damages arising therefrom;

C. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Philips from continuing the unlawful practices alleged herein, and injunctive relief to remedy Philips' past conduct;

D. A judgment awarding Plaintiffs, members of the Class, and members of the State Subclasses all appropriate damages, in an amount to be determined at trial;

E. A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate.

F. A judgment awarding Plaintiffs, members of the Class, and members of the State Subclasses prejudgment and post-judgment interest, as permitted by law;

G.  A judgment awarding Plaintiffs, members of the Class, and members of the State

Subclasses costs and fees, including attorneys' fees, as permitted by law; and

H.  Grant such other legal, equitable or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

DATED:          July 26, 2021                    Respectfully submitted,

*/s/ Sean K. McElligott*
Sean K. McElligott (Mass. BBO #651710)
David S. Golub (*pro hac vice* forthcoming)
Steven L. Bloch (*pro hac vice* forthcoming)
Ian W. Sloss (*pro hac vice* forthcoming)
Zachary A. Rynar (*pro hac vice* forthcoming)
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
smcelligott@sgtlaw.com
rsilver@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

Joseph P. Guglielmo (BBO# 671410)
Erin G. Comite (*pro hac vice* forthcoming)
Alex Outwater (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
aoutwater@scott-scott.com